**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**William E. CAMBRA, Jr., aka B.C.,
Defendant–Appellant.**

No. 90–50442.

United States Court of Appeals,
Ninth Circuit.

Submitted March 6, 1991 *.

Decided May 15, 1991.

---

\* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Warren R. Williamson, Utsinger & Williamson, San Diego, Cal., for defendant-appellant.

Phillip L.B. Halpern, Asst. U.S. Atty., San Diego, Cal., Sharon I. Kurn, Office of Consumer Litigation, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before D.W. NELSON, CANBY and RYMER, Circuit Judges.

RYMER, Circuit Judge:

William E. Cambra, Jr. plead guilty on April 17, 1990, to three counts of violating the Food, Drug, and Cosmetic Act. He appeals his sentence of 24 months plus one year of supervised release, claiming the district court should have applied the sentencing guideline relating to food and drug offenses, U.S.S.G. § 2N2.1, rather than the one for fraud and deceit, § 2F1.1. In the alternative, Cambra claims the district court improperly enhanced his sentence based on the dollar amount of the fraud. We conclude that the district court applied the correct guidelines and affirm.

I

A grand jury returned a 12–count indictment against Cambra on August 25, 1989, and Cambra plead guilty to counts 10, 11 and 12. Count 10 charged him with holding, causing to be held for sale and selling counterfeit steroids with intent to defraud and mislead in violation of 21 U.S.C. § 331(i)(3) & 333(b).[1] Count 11 charged him with distributing misbranded human growth hormone with intent to defraud and mislead in violation of 21 U.S.C. § 331(k) & 333(b).[2] Count 12 charged him with distributing anabolic steroids in violation of 21 U.S.C. § 333(e)(1). For counts 10 and 11, § 331 describes the prohibited acts and § 333 increases the potential penalty for violations committed "with the intent to defraud or mislead."

II

We review "de novo the district court's application of the Sentencing Guidelines." *United States v. Lockard,* 910 F.2d 542, 543 (9th Cir.1990) (citation omitted). We must "accept the findings of fact of the district court unless they are clearly erroneous." 18 U.S.C. § 3742(e).

The sentencing guidelines[3] instruct the sentencing court to "[d]etermine the applicable offense guideline section" and note that a "Statutory Index (Appendix A) provides a listing *to assist* in this determination." U.S.S.G. § 1B1.1(a) (emphasis added). The Statutory Index, which "specifies the guideline section or sections *ordinarily* applicable to the statute of conviction," U.S.S.G. App. A (emphasis added), points to § 2N2.1 for offenses violating 21 U.S.C. §§ 331 & 333.[4]

■ Section 2N2.1 applies to "Violations of Statutes ... Dealing With Any Food, Drug, Biological Product ... or Agricultural Product." If the specified guideline is "inappropriate," the introduction to the Index explains that the sentencing

---

1. The parties agree that the indictment erroneously referred to the wrong subsection of § 333. After July 1988, the correct subsection is § 333(a)(2).

2. *See supra* note 1.

3. We consider the guidelines in effect at the time of sentencing. 18 U.S.C. § 3553(a)(4).

4. The guidelines have since been amended. The Index now refers to both § 2N2.1 *and* § 2F1.1 for 21 U.S.C. § 333(a)(2), dealing with fraud and deceit.

court should apply the guideline section "most applicable to the nature of the offense conduct charged," but it suggests that the sentencing court will only apply a different guideline than the one specified in the Index if it is "an atypical case." U.S.S.G. App. A. Cambra contends that § 2N2.1 should apply to his offense because the Index specifies it and because his case is not "atypical."

■ The district court used § 2F1.1, which applies to offenses involving fraud or deceit. The court found that counts 10 and 11 constituted fraud according to the definition in *United States v. Bradshaw*, 840 F.2d 871, 874–75 (11th Cir.), *cert. denied*, 488 U.S. 924, 109 S.Ct. 305, 102 L.Ed.2d 324 (1988). We agree with the Eleventh Circuit that the "intent to defraud or mislead" language in 21 U.S.C. § 333 may encompass both fraud on the ultimate consumer and fraud on government enforcement agencies. *Id.* at 874. In this case, Cambra had plead guilty to two counts alleging an intent to defraud. He had sold products counterfeited to represent different products made by reputable manufacturers. The government and Cambra agreed at sentencing that Cambra "had at least the intent that the FDA not realize what he was doing, and he certainly was trying to hide his activities from the FDA because he was worried that they certainly wouldn't approve of what he was doing." The district court was justified in concluding that the offense involved fraud and deceit.

■ The guidelines instruct sentencing courts to "[d]etermine the offense guideline section ... *most applicable* to the offense of conviction." U.S.S.G. § 1B1.2(a) (emphasis added). Cambra's position ignores the specific nature of his conduct, which the district court determined to have involved fraud or deceit, either on consumers, federal enforcement agencies or both. Cambra instead urges us to read the Statutory Index as an exclusive listing. Yet all of the guidelines' application instructions characterize the Index as an interpretive aid; it guides the sentencing court toward

the "ordinarily applicable" guideline and is described as a tool that "may" be used to "assist" in determining the appropriate guideline. U.S.S.G. § 1B1.1(a). Rather than establishing immutably the exclusive list of available guidelines for given offenses, the Index merely points the court in the right direction. Its suggestions are advisory; what ultimately controls is the "most applicable guideline." In this case, where the offense involved fraud and deceit, the most applicable guideline is the one relating to fraud and deceit.

The commentary to § 2N2.1 supports the district court's determination that § 2F1.1 was the most applicable guideline in this case. Application Note 2 to § 2N2.1 instructs, "If the offense involved ... fraud ... apply the guideline applicable to the underlying conduct, rather than this guideline." U.S.S.G. § 2N2.1, comment. (n.2). Failing to follow commentary that "explain[s] how [a guideline] is to be applied.... could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal." U.S.S.G. § 1B1.7 (Significance of Commentary).

■ Cambra's contention that the district court erred in basing his sentence upon a more serious offense than the one charged is meritless. A court may base a sentence on a more serious offense where the guilty plea stipulation specifically establishes the more serious offense. *See* U.S.S.G. § 1B1.2(a); *United States v. Bos*, 917 F.2d 1178, 1180–81 (9th Cir.1990). The § 1B1.2(a) exception only applies where the court is choosing a guideline *other than* the one most applicable to the offense of conviction. In this case, the district court used the guideline most applicable to the offense charged: § 2F1.1, the one for fraud and deceit.

■ Cambra's final argument on this issue is that the guidelines are ambiguous as to which one applies to a steroid offense involving fraud and that therefore the rule of lenity should apply. *See Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205, 211 (1980)

("'the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended'" (quoting *Ladner v. United States,* 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199, 205 (1958)). Cambra argues that it is unclear whether Congress intended the fraud guidelines to apply to this type of a case. The plain language of the guidelines and accompanying commentary belies that argument. Fraud is the "most applicable" guideline. Application Note 2 to § 2N2.1 specifically instructs a court not to apply that guideline in cases involving fraud, and § 1B1.7 instructs courts to follow that type of commentary. "Where Congress has manifested its intention, [the courts] may not manufacture ambiguity in order to defeat that intent." *Bifulco,* 447 U.S. at 387, 100 S.Ct. at 2252, 65 L.Ed.2d at 211. Because there is insufficient ambiguity in this case, the rule of lenity does not come into play.

### III

The base offense level for § 2F1.1 is six, just as it is for § 2N2.1. The § 2F1.1 guideline is to be increased, though, where the loss exceeds $2,000. In this case, the government and Cambra stipulated that the dollar value of the steroids *or* counterfeit steroids alleged in the indictment was $500,000. Cambra makes two arguments: (1) that the government's theory of fraud on enforcement agencies does not involve monetary loss; and (2) that the stipulation does not apportion the amount involved among counts 10 and 11 (involving fraud) and count 12 (involving sale of steroids). Both arguments lack merit.

#### A. Use of Monetary Value

■ Cambra argues that fraud on federal enforcement agencies is not financial in nature and that the district court therefore

erred in applying § 2F1.1(b)(1)(H) (enhancing guideline score where amount of fraud falls within $200,001 and $500,000).[5] He does not, however, support his contention with argument. The monetary table in the fraud guideline is intended to reflect "the harm to the victim and the gain to the defendant." U.S.S.G. § 2B1.1, comment. (back'd); *see* U.S.S.G. § 2F1.1, comment. (n. 7) (instructing court to look to § 2B1.1 commentary in evaluating § 2F1.1). Federal agencies may be the victims of fraud in counterfeiting and misbranding drugs. *Bradshaw,* 840 F.2d at 874. There is no meaningful distinction between the government as victim and individual consumer victims; *Bradshaw* held that it is possible for either or both to be defrauded. In this case, the district court found that Cambra intended to profit from his activity and that at least federal agencies were defrauded by his acts. Adjusting the guideline range based on the amount involved is therefore appropriate.

#### B. The Stipulation

■ Cambra agrees that he stipulated to the total value involved in his offense, but he claims that the amount involved in the fraud-related counts (10 and 11), as opposed to the nonfraud steroid count (12), is unspecified. Therefore, he claims, the district court erred in using the total $500,000 figure in computing his guidelines under counts 10 and 11.

The government counters that the stipulation specifically provided that the value involved in steroids *or* counterfeit steroids was $500,000. The district court found the $500,000 figure to be a part of the basis of counts 10 and 11 and the record contains evidence that the actual amount involved might have been much higher. Given the use of the conjunction "or" in informing the court of the stipulation and that the record contains evidence of an even higher amount of fraud, it was not clear error for the district court to use the $500,000 figure for counts 10 and 11.

---

**5.** Section 2F1.1(b)(1) has since been amended. Different dollar value ranges now apply to new offenses.

## IV

Because the record demonstrates that Cambra's offenses involved fraud and deceit and § 2F1.1 is the most applicable guideline for such an offense, the district court applied the correct base guideline. Furthermore, the district court was correct in applying the guideline enhancement based on the amount of the fraud. Cambra's sentence is

AFFIRMED.